**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 29, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MALCOM DEROME MCGEE,

    Defendant - Appellant.

---------------------------------------

KANSAS FEDERAL PUBLIC
DEFENDERS,

    Amicus Curiae.

No. 20-5047

_____

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:00-CR-00105-CVE-1)**
_____

Susan L. Champion (Michael S. Romano, on the briefs), Three Strikes Project, Stanford
Law School, Stanford, California, appearing for Appellant.

Leena Alam, Assistant United States Attorney (R. Trent Shores, United States Attorney,
with her on the brief), Office of the United States Attorney for the Northern District of
Oklahoma, Tulsa, Oklahoma, appearing for Appellee.

Melody Brannon, Federal Public Defender, and Kayla Gassmann, Appellate Attorney,
Office of the Federal Public Defender for the District of Kansas, Kansas City, Kansas, on
the brief for Amicus Curiae.
_____

Before **MORITZ**, **SEYMOUR**, and **BRISCOE**, Circuit Judges.

_____

**BRISCOE**, Circuit Judge.

_____

In November 2000, defendant Malcom McGee was convicted by a jury of three criminal counts: (1) conspiracy to possess with intent to distribute one kilogram or more of a mixture of substance containing a detectable amount of PCP, in violation of 21 U.S.C. § 846; (2) causing another person to possess with intent to distribute in excess of one kilogram of a mixture or substance containing a detectable amount of PCP, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iv), and 18 U.S.C. § 2(b); and (3) using a communication facility to commit and facilitate the commission of a felony, in violation of 21 U.S.C. § 843(b). Because McGee had previously been convicted in the State of California of two felony drug offenses, the district court sentenced McGee to a mandatory term of life imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A).

Following Congress's enactment of the First Step Act of 2018 (First Step Act) and the changes the First Step Act made to both § 841(b)(1)(A) and 18 U.S.C. § 3582(c)(1)(A), McGee filed a motion with the district court pursuant to § 3582(c)(1)(A)(i) to reduce his sentence based on "extraordinary and compelling reasons." The district court denied that motion. McGee now appeals. Exercising jurisdiction pursuant to 28 U.S.C. § 2241, we reverse and remand to the district court for further consideration of McGee's motion.

I

*McGee's criminal conduct*

In July 2000, McGee participated in a scheme to transport a large quantity of phencyclidine (PCP) by way of a commercial bus from California to Washington, D.C. The scheme was discovered by law enforcement officials in Tulsa, Oklahoma, when the woman transporting the PCP became ill due to the odor of the PCP. McGee was arrested in Tulsa when he attempted to take possession of the PCP from the woman.

*McGee's criminal proceedings*

In August 2000, a federal grand jury indicted McGee on three criminal counts: Count One, conspiracy to possess with intent to distribute one kilogram or more of a mixture or substance containing a detectable amount of PCP, in violation of 21 U.S.C. § 846; Count Two, causing another person to possess with intent to distribute in excess of one kilogram of a mixture or substance containing a detectable amount of PCP, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iv), and 18 U.S.C. § 2(b); and Count Three, using a communication facility, i.e., a telephone, to commit and facilitate the commission of a felony (i.e., using a telephone to discuss various matters concerning the possession with intent to distribute and the distribution of PCP), in violation of 21 U.S.C. § 843(b).

The case proceeded to trial in October 2000. At the conclusion of the evidence, the jury found McGee guilty on all three counts alleged in the indictment. The district court subsequently arrested judgment as to Count One. In April 2001,

3

the district court sentenced McGee to a term of life imprisonment on Count Two and a term of imprisonment of fifty-six years on Count Three, with the terms to run concurrently.

McGee received a life sentence on Count Two because, at the time of his federal offense, he had two prior final California felony drug convictions. *See* 21 U.S.C. § 841(b)(1)(A) (increasing punishment to mandatory life imprisonment if the defendant committed a violation involving a threshold amount of drugs "after two or more prior convictions for a felony drug offense have become final"). Those two prior convictions were: (1) a November 7, 1987 conviction for possession of cocaine; and (2) an April 14, 1988 conviction for possession of cocaine base with intent to sell/deliver.

McGee appealed his conviction on Count Two and his sentence on Count Three. We affirmed the conviction on Count Two, but reversed the sentence on Count Three and remanded for resentencing on that count.[1] *United States v. McGee*, 291 F.3d 1224, 1225 (10th Cir. 2002). On December 4, 2002, the district court resentenced McGee to a term of imprisonment of 96 months on Count Three, to run concurrently with the life sentence previously imposed on Count Two.

---

[1] In reversing McGee's sentence on Count Three, we noted that "[c]ontrary to the indictment, the revised presentence investigation report (PSI)," which the district court adopted, "treated Count [Three] as having charged one violation for each of the seven telephone calls Mr. McGee made to" the woman who transported the PCP. 291 F.3d at 1227.

4

*McGee's § 2255 motion*

In December 2003, McGee filed a motion pursuant to 28 U.S.C. § 2255 to vacate or set aside his life sentence. In support, McGee noted that "[t]he state of California [had] . . . adopted Proposition 47, allowing its courts to reclassify certain felony drug convictions as misdemeanors," and that, consistent with Proposition 47, "[a] California court entered a *nunc pro tunc* judgment reducing one of [his] prior drug convictions from a felony to a misdemeanor" (specifically, McGee's 1987 conviction for possession of cocaine was reduced to a misdemeanor). *United States v. McGee*, 760 F. App'x 610, 611 (10th Cir. 2019). The district court denied McGee's motion, concluding "that McGee still qualified for the life sentence as a matter of federal law because both his prior felony drug convictions had been final and applicable at the time he was sentenced under § 841." *Id*.

We granted McGee a COA and ultimately affirmed the district court's denial of McGee's § 2255 motion, concluding that "[t]he increased penalties under § 841 [we]re designed to discourage recidivism." *Id*. at 616. We noted that "[i]f a defendant committed a serious federal drug offense knowing that he had two prior felony drug convictions, and if [he] has not shown that he was factually innocent of those prior convictions or that they were legally infirm, it does not violate due process to deny resentencing even if a state legislature later graciously decreased the penalty associated with a prior offense." *Id*.

McGee filed a petition for writ of certiorari with the United States Supreme Court. That petition was denied. *McGee v. United States*, 140 S. Ct. 218 (2019).

5

*The relevant changes implemented by the First Step Act*

Prior to December 2018, a defendant like McGee who had two prior convictions for felony drug offenses and was sentenced under § 841(b)(1)(A) was subject to mandatory life imprisonment. On December 21, 2018, Congress passed the First Step Act, Pub. L. 115-391. Of relevance here, § 401 of the First Step Act reduced the mandatory minimum sentence under § 841(b)(1)(A) from life to 25 years. Congress did not, however, make that change retroactive to all inmates, such as McGee, who were sentenced under § 841(b)(1)(A) prior to the First Step Act. Instead, § 401(c) of the First Step Act provided that the amendments effected by § 401 "shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." Pub. L. No. 115-391, § 401(c), 132 Stat. 5194, 5221 (2018).

As will be discussed in greater detail below, the First Step Act also made important changes to 18 U.S.C. § 3582(c)(1)(A)(i), which is sometimes referred to as the "compassionate release" statute.

*McGee's petition for reduction of sentence*

On January 10, 2020, McGee filed a request with the warden of the Federal Correctional Institution in Victorville, California, asking that the warden move for a reduction of McGee's sentence pursuant to § 3582(c)(1)(A)(i). McGee received no response to his request.

On March 10, 2020, McGee filed a motion to reduce his sentence pursuant to § 3582(c)(1)(A)(i). McGee argued in his motion that the district court had authority

6

to resentence him under § 3582(c)(1)(A)(i) for extraordinary and compelling reasons. In support, McGee argued that: (a) he received a mandatory life sentence under a provision of § 841(b)(1)(A) that was amended by § 401 of the First Step Act because Congress considered it to be unduly punitive; (b) he was serving a sentence that would be substantially lower if imposed at the time of his petition because of changes to federal statutory law and California state drug law[2]; (c) his remarkable record of rehabilitation added to the determination that he presented extraordinary and compelling reasons to support a sentence reduction; and (d) if resentenced and eventually released, he had a comprehensive reentry plan in place that included support from his family.

The government opposed McGee's motion. The government acknowledged that the First Step Act authorized a defendant to "file a § 3582(c)(1)(A) motion himself" if "the Director of the Bureau of Prisons had failed to do so." Aplt. App. at 64. But the government argued that the First Step Act "did not alter the requirements for granting such a motion." *Id*. at 65-66. More specifically, the government argued that "in order to grant compassionate release motions, courts must still find either that an inmate is over 70 and meets the other requirements of § 3582(c)(1)(A)(ii), or

---

[2] McGee specifically argued on this point: "Under changes to California's drug laws, enacted by the Safe Neighborhoods and Schools Act ("Proposition 47") in 2014, Mr. McGee's prior 1987 drug possession conviction has been retroactively reduced to a misdemeanor by court order. Exhibit (hereafter "Ex.") A. Under the 21 U.S.C. § 802 definition of a "serious drug felony," this misdemeanor conviction could not serve as a prior felony conviction for the purpose of enhancing a sentence under 21 U.S.C. § 841." Aplt. App. at 30.

that 'extraordinary and compelling reasons warrant such a reduction,' and that 'such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission.'" *Id*. at 66 (emphasis omitted) (quoting § 3582(c)(1)(A)). Relatedly, the government argued that the Sentencing Commission's 2018 policy statement remained valid and that, under that policy statement, there were four circumstances that provided "extraordinary and compelling reasons" for reducing a defendant's sentence. *Id*. at 66-67. The government in turn argued that McGee could not "meet either the requirements of § 3582(c)(2)(A)(ii) or any of the circumstances set forth as 'extraordinary and compelling reasons' in the relevant policy statement." *Id*. at 67-68. In particular, the government noted that the Director of the Bureau of Prisons had not made a determination that there existed in McGee's case any extraordinary or compelling reason. *Id*. at 68-69. The government also argued that, in any event, "a review of McGee's circumstances show[ed] they [we]re by no means extraordinary." *Id*. at 69. In particular, the government argued that neither the First Step Act's change to § 841(b)(1)(A) nor California's enactment of Proposition 47 and the subsequent alteration of one of McGee's convictions from felony to misdemeanor constituted extraordinary and compelling circumstances that warranted a reduction in his life sentence. Lastly, the government argued that McGee's post-sentencing rehabilitation, standing alone, could not provide an extraordinary and compelling reason for compassionate relief in light of the Sentencing Commission's policy statement.

On April 20, 2020, the district court issued a three-page form order denying McGee's motion. To that form order, the district court added the following language specific to McGee's case:

> Although defendant's sentence would be substantially lower if sentenced today post-First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 (2018), Congress chose not to make § 401, the provision applicable to defendant's mandatory life sentence, retroactive. Therefore, the Court finds that to utilize the "other reasons" commentary at USSG §1B1.13, comment. (n.1(D)), to apply § 401 in order to reduce defendant's sentence under 18 U.S.C. § 3582(c)(1)(A), for "extraordinary and compelling reasons," would usurp the power given exclusively to Congress. Further, there are no other factors cited by defendant that correspond with the requirements specified by the Sentencing Commission to define "extraordinary and compelling reasons" at USSG §1B1.13, comment. (n.1), to warrant a reduction under 18 U.S.C. § 3582(c)(1)(A).

*Id*. at 76.

On April 29, 2020, McGee filed a motion for reconsideration. On May 4, 2020, McGee filed a notice of appeal from the district court's April 20, 2020 decision.

On May 7, 2020, the district court denied McGee's motion for reconsideration, concluding that McGee's notice of appeal deprived it of jurisdiction.

## II

McGee raises two issues on appeal. First, he argues that the district court erred in determining that it lacked the authority to reduce his sentence. Second, he argues that extraordinary and compelling reasons that were not fully considered by the district court warrant a reduction of his sentence. Because we agree with McGee that the district court misconstrued the nature of its authority under § 3582(c)(1)(A),

9

we reverse and remand to the district court so that it may consider McGee's motion anew. Consequently, we do not reach the second issue raised by McGee.

*Standard of review*

Because McGee's arguments require us to interpret § 3582(c)(1)(A) and related statutes and determine the scope of the district court's authority thereunder, we apply a de novo standard of review. *See United States v. Ansberry*, 976 F.3d 1108, 1126 (10th Cir. 2020); *United States v. White*, 765 F.3d 1240, 1245 (10th Cir. 2014); *United States v. Cobb*, 584 F.3d 979, 982 (10th Cir. 2009).

*Section 3582(c)(1) – history and text*

Before addressing McGee's arguments on appeal, we begin by reviewing the history of § 3582(c)(1), as well as its current text and the requirements that are effectively imposed by that text.

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but th[at] rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011) (internal quotation marks and citation omitted). One such exception is contained in § 3582(c)(1).

Prior to 2018, § 3582(c)(1) only authorized the Director of the BOP to move for a reduction in a defendant's sentence. In other words, from the enactment of § 3582(c)(1) in 1984 through late 2018, a defendant could not move for a reduction in his or her sentence and was instead wholly dependent upon the Director of the BOP doing so on his or her behalf.

10

Between 1984 and 2013, the Director of the BOP used the process outlined in § 3582(c)(1) to release an average of twenty-four inmates per year. *United States v. Rodriguez*, 451 F. Supp. 3d 392, 395 (E.D. Pa. 2020) (citing *Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n*, 2016, statement of Michael E. Horowitz, Inspector General, Dep't of Justice). In 2013, the Office of the Inspector General reported that the BOP inconsistently implemented and poorly managed the compassionate release program, resulting in overlooked eligible inmates and terminally ill inmates dying while their requests were pending. *Id.*

Congress sought to address these issues by way of the First Step Act. Section 603(b) of the First Step Act, entitled "INCREASING THE USE AND TRANSPARENCY OF COMPASSIONATE RELEASE," modified § 3582(c)(1) to allow a defendant to directly file a motion for compassionate release with the district court after either exhausting administrative rights to appeal the Director of the BOP's failure to file such a motion or the passage of 30 days from the defendant's unanswered request to the warden for such relief. *See* 132 Stat. at 5239.

As amended by the First Step Act, § 3582(c)(1) now provides, in pertinent part, as follows:

> (c) **Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that—
>
> > (1) in any case—

11

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

Under the plain language of the statute, a district court may thus grant a motion for reduction of sentence, whether filed by the Director of the BOP or a defendant, only if three requirements are met: (1) the district court finds that extraordinary and compelling reasons warrant such a reduction; (2) the district court finds that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the district court considers the factors set forth in § 3553(a), to the extent that they are applicable.

The Sixth Circuit, in a recent decision, interpreted § 3582(c)(1)(A)(i) in this same manner and, in doing so, adopted what it described as a three-step test for "courts considering motions filed under § 3582(c)(1)." *United States v. Jones*, 980 F.3d 1098, 1107 (6th Cir. 2020). "At step one" of the test, the Sixth Circuit held, "a [district] court must 'find[]' whether 'extraordinary and compelling reasons warrant'

12

a sentence reduction." *Id*. at 1107-08 (quoting § 3582(c)(1)(A)(i)). "At step two," the Sixth Circuit held, "a [district] court must 'find[]' whether 'such reduction is consistent with *applicable* policy statements issued by the Sentencing Commission.'" *Id*. at 1108 (emphasis in original) (quoting § 3582(c)(1)(A)). "At step three," the Sixth Circuit held, "'§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case.'" *Id*. (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)). Because this three-step test is consistent with the plain language of the statute, we adopt the test for use in this circuit.

We also agree with the Sixth Circuit that "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). But when a "district court grants a motion for compassionate release, it must of course address all three steps." *United States v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021) (citing *Elias*, 984 F.2d at 519).

*Did the district court err in concluding that it lacked authority to reduce McGee's sentence?*

We now turn to McGee's first issue on appeal. McGee argues that the district court erred in concluding that it lacked the authority to grant relief under § 3582(c)(1)(A)(i) based upon the factors cited in his motion. For the reasons outlined below, we agree with McGee and conclude that the authority afforded to the district court

13

under both steps one and two of the statutory test outlined in § 3582(c)(1)(A)(i) is greater than the district court understood it to be.

*a) The district court's general authority at step one of the statutory test*

It is apparent from the district court's decision that it concluded its authority at step one of the statutory test was constrained by the Sentencing Commission's policy statements.[3] More specifically, the district court's decision indicates that it concluded the Sentencing Commission possessed the exclusive authority to define, through its general policy statements, the statutory phrase "extraordinary and compelling reasons." This, we conclude, was an error.

Section 3582(c)(1)(A)(i), as we have discussed, requires a district court considering a motion filed thereunder to find, at the first step of the statutory test, whether "extraordinary and compelling reasons warrant a sentence reduction." *Id*. (quoting § 3582(c)(1)(A)(i)). But neither § 3582(c)(1)(A)(i), nor any other part of the statute, defines the phrase "extraordinary and compelling reasons" or indicates that the Sentencing Commission is charged with defining the phrase. That said, Congress has, in a different statute, directed the Sentencing Commission, as part of its statutory duties, to promulgate "general policy statements" regarding the appropriate use of the sentence modification provisions set forth in § 3582(c). 28

---

[3] The district court stated in its decision: "Further, there are no other factors cited by defendant that correspond with the requirements specified by the Sentencing Commission to define "extraordinary and compelling reasons" at U.S.S.G. § 1B1.13, comment. (n.1), to warrant a reduction under 18 U.S.C. § 3582(c)(1)(A)." Aplt. App. at 76.

14

U.S.C. § 994(a)(2)(C). Congress has also directed the Sentencing Commission, in promulgating those general policy statements, to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). "Rehabilitation of the defendant alone," Congress has stated, "shall not be considered an extraordinary and compelling reason." *Id.*

The government argues in its appellate response brief that Congress, through this statutory framework, intended "that the Sentencing Commission, not courts, define what types of circumstances constitute 'extraordinary and compelling reasons' warranting compassionate release." Aple. Br. at 17. In our view, however, the most plausible interpretation of both § 994(t) and § 3582(c)(1)(A)(i) is that Congress intended to afford district courts with discretion, in carrying out the first step of the statutory test in § 3582(c)(1)(A)(i), to independently determine the existence of "extraordinary and compelling reasons," and for that discretion to be circumscribed under the second step of the statutory test by requiring district courts to find that a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Turning first to § 994(t), we note that Congress, in outlining the Sentencing Commission's duties, chose to employ the word "describe" rather than the word "define." The word "describe" is commonly defined to mean "to use words to convey a mental image or impression of (a person, thing, scene, situation, event, etc.) by referring to characteristic or significant qualities, features, or details." Oxford

15

English Dictionary Online (3d ed. 2015), https://www.oed.com/view/Entry/50732 (last accessed Mar. 18, 2021). In contrast, the word "define" is commonly understood to mean "[t]o set bounds to, to limit, restrict, confine." *Id.*, https://www.oed.com/view/Entry/48874 (last accessed Mar. 18, 2021). We presume that Congress was aware of the difference between these two words and knowingly chose to use the word "describe," rather than the word "define," in setting forth its statutory directive to the Sentencing Commission in § 994(t). *Cf. Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1738 (2020) ("This Court normally interprets a statute in accord with the ordinary public meaning of its terms at the time of its enactment.").

Congress's choice of the word "describe" makes sense when considered in light of the fact that the specific duty imposed by § 994(t) is part of the Sentencing Commission's overarching duty to "promulgat[e] general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18." 28 U.S.C. § 994(t); *see* 28 U.S.C. § 994(a)(2)(C). As Congress, the federal courts, and the Department of Justice have all long recognized, "general policy statements" differ from "substantive rules" or even "interpretative rules." *See generally* 5 U.S.C. § 553 (outlining rule-making procedures that apply to substantive rules, but not to general policy statements or interpretative rules); *Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000) (holding that "interpretations contained in policy statements . . . do not warrant *Chevron*-style deference" and instead "are 'entitled to respect' under [the] decision in *Skidmore*"); *Chrysler Corp. v. Brown*, 441 U.S. 281, 301-02 (1979) (distinguishing "substantive rules" from "interpretative rules" and "general

16

statements of policy"); *Am. Mining Cong. v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1109 (D.C. Cir. 1993) (distinguishing "substantive rules," "general statements of policy" and "interpretative rules"); *Attorney General's Manual on the Administrative Procedure Act* 30 n.3 (1947) (setting forth "working definitions" of "substantive rules," "interpretative rules," and "general statements of policy"). In particular, "general statements of policy" are issued by an agency to advise the public prospectively of the manner in which the agency intends for a discretionary power to be exercised, and thus differ from "interpretative rules," which are issued by an agency to advise the public of the agency's construction of the statutes it administers, as well as from "substantive rules," which have the force or effect of law. *Am. Mining Cong.*, 995 F.2d at 1109 (citing *Attorney General's Manual on the Administrative Procedure Act*).

Congress's use of the word "describe" in § 994(t) is also consistent, we conclude, with the overall framework of § 3582(c)(1)(A). If, as the government asserts, Congress intended by way of § 994(t) to afford the Sentencing Commission with the exclusive authority to define the phrase "extraordinary and compelling reasons," that would mean that district courts, in carrying out the first step of § 3582(c)(1)(A)'s statutory test, would have to examine the Sentencing Commission's general policy statements to determine the meaning of the phrase "extraordinary and compelling reasons," and would in turn have to, in carrying out the second step of § 3582(c)(1)(A)(i)'s statutory test, return to those exact same policy statements to determine whether a reduction is "consistent with" any

17

"applicable" statements. The government's position would thus render the second part of § 3582(c)(1)(A)'s statutory test largely, if not entirely, superfluous. If, on the other hand, the Sentencing Commission's description of what constitutes "extraordinary and compelling reasons" is treated not as the equivalent of a statutory definition, but instead as a "general policy statement," the problem is avoided. District courts, in carrying out the first step of § 3582(c)(1)(A)'s statutory test, decide for themselves whether "extraordinary and compelling reasons" exist in a given case. Then, in carrying out the second step of § 3582(c)(1)(A)'s statutory test, district courts turn to the Sentencing Commission's policy statements to determine whether a reduction is "consistent with" any "applicable" policy statements, including any descriptions given by the Sentencing Commission of what it considers to be "extraordinary and compelling reasons."

We therefore conclude that district courts, in applying the first part of § 3582(c)(1)(A)'s statutory test, have the authority to determine for themselves what constitutes "extraordinary and compelling reasons," but that this authority is effectively circumscribed by the second part of the statutory test, i.e., the requirement that a district court find that a reduction is consistent with applicable policy statements issued by the Sentencing Commission pursuant to §§ 994(a)(2)(C) and (t). In other words, we conclude that Congress did not, by way of § 994(t), intend for the Sentencing Commission to exclusively define the phrase "extraordinary and compelling reasons," but rather for the Sentencing Commission to describe those characteristic or significant qualities or features that typically constitute "extraordinary and compelling reasons," and

18

for those guideposts to serve as part of the general policy statements to be considered by district courts under the second part of the statutory test in § 3582(c)(1)(A).

*b) The district court's authority to consider McGee's § 841(b)(1)(A) sentence*

The district court also, as part of its analysis under the first step of the statutory test, concluded that it lacked the authority to treat the First Step Act's reduction of the mandatory minimum sentence under § 841(b)(1)(A) from life to 25 years as an "extraordinary and compelling reason" for purposes of § 3582(c)(1)(A)(i). The district court stated that, because "Congress chose not to make § 401 . . . retroactive" to all defendants previously sentenced under § 841(b)(1)(A), treating the enactment of § 401 as a basis for reducing McGee's sentence under § 3582(c)(1)(A)(i) "would usurp the power given exclusively to Congress." Aplt. App. at 76. As we shall proceed to explain, we agree in part and disagree in part with the district court's conclusion.

We begin by noting that Congress has not directly addressed the precise question we now face, i.e., whether a district court considering a motion filed by a defendant under § 3582(c)(1)(A) may, under the first step of the statutory test, find the existence of "extraordinary and compelling circumstances" based, at least in part, on the fact that the First Step Act lowered the mandatory minimum sentences to be imposed under § 841(b)(1)(A). What we do know with certainty, however, is that Congress chose not to make this statutory change retroactive to *all* defendants who were sentenced under § 841(b)(1)(A) prior to the First Step Act. We also know that Congress intended for § 3582(c)(1)(A) "to provide a 'safety valve' that allows for sentence reductions" to any defendant "when there is *not* a specific statute that already affords relief but

19

'extraordinary and compelling reasons' nevertheless justify a reduction." *United States v. McCoy*, 981 F.3d 271, 287 (4th Cir. 2020) (emphasis in original). And we know that Congress, by way of § 603(b) of the First Step Act, intended to increase the use of sentence reductions under § 3582(c)(1)(A).

With these statutory guideposts in mind, we turn to two recent decisions, one from the Sixth Circuit and the other from the Fourth Circuit, that provide useful analysis in answering the question before us. In *United States v. Tomes*, — F.3d —, 2021 WL 868555 (6th Cir. Mar. 9, 2021), the Sixth Circuit considered a defendant's appeal from a district court's denial of his motion for compassionate release under § 3582(c)(1)(A). The defendant argued, in part, that "he should receive compassionate release because if he were sentenced today for the same crime, he would not have gotten the sentence he did." *Id*. at *4. In support, the defendant "point[ed] out that before the First Step Act, a violation of 21 U.S.C. § 841(b)(1)(A) (one of the statutes to which [he] pled guilty to violating) carried a mandatory minimum sentence of twenty years if the defendant had a prior conviction for a 'felony drug offense.'" *Id*. The defendant in turn noted that "[s]ection 401 of the First Step Act . . . amended § 841, and it now imposes a shorter mandatory minimum of fifteen years, and only when the prior offense was a 'serious drug felony.'" *Id*. (quoting 21 U.S.C. § 841(b)(1)(A)). He "argue[d] that his prior state convictions for dealing in cocaine and trafficking in a controlled substance d[id] not qualify as 'serious drug felonies,'" and that, as a result, "the mandatory floor no longer applies to him." *Id*.

The Sixth Circuit rejected these arguments. In doing so, the Sixth Circuit noted that "[t]he First Step Act explicitly says that the amendment" relied on by the defendant, i.e., § 401, "applies only where a sentence for the offense has not been imposed as of the date of the Act's enactment." *Id*. (quotation marks and brackets omitted). Because the defendant's sentence was imposed prior to the First Step Act, the Sixth Circuit concluded that § 401 was "inapplicable" to him. *Id*. The Sixth Circuit also stated that it "w[ould] not render § 401(c) useless by using § 3582(c)(1)(A) as an end run around Congress's careful effort to limit the retroactivity of the First Step Act's reforms." *Id*. Thus, in sum, the Sixth Circuit concluded that the mere fact of a defendant's pre-First Step Act mandatory minimum sentence under § 841(b)(1)(A) cannot serve as the basis for a sentence reduction under § 3582(c)(1)(A).

In *McCoy*, the Fourth Circuit considered a question substantially similar to the one we now face: whether it is permissible for district courts, at step one of § 3582(c)(1)(A)'s test, to consider the First Step Act's elimination of "sentence-stacking" under 18 U.S.C. § 924(c), even though Congress chose not to make that change retroactive to all defendants who received stacked sentences prior to the First Step Act. *McCoy*, 981 F.3d at 284-87. The Fourth Circuit concluded that it was permissible for district courts to "treat[] as 'extraordinary and compelling reasons' for compassionate release the severity of the defendants' § 924(c) sentences and the extent of the disparity between the defendants' sentences and those provided for under the First Step Act." *Id*. at 286. The Fourth Circuit emphasized, however, that it was not the length of the original sentences alone that constituted "extraordinary and compelling reasons." Rather, the Fourth Circuit

21

noted, the judgments before it "were the product of . . . full consideration of the defendants' individual circumstances," including, but not limited to, their § 924(c) sentences. *Id*. Those circumstances included "the defendants' relative youth . . . at the time of their offenses," the amount of time each defendant had already served on their original sentences, the defendants' "excellent institutional records," and the "substantial steps toward rehabilitation" taken by the defendants. *Id*.

In reaching this conclusion, the Fourth Circuit rejected the government's argument "that by taking into account the First Step Act's elimination of § 924(c) sentence-stacking, the district courts impermissibly gave that provision retroactive effect, contrary to Congress's direction." *Id*. "The fact that Congress chose not to make § 403 categorically retroactive," the Fourth Circuit concluded, "does not mean that courts may not consider that legislative change in conducting their individualized reviews of motions for compassionate release under §3582(c)(1)(A)(i)." *Id*. The Fourth Circuit explained: "there is a significant difference between automatic vacatur and resentencing of an entire class of sentences . . . and allowing for the provision of individual relief in the most grievous cases." *Id* at 286-87. "Indeed," the Fourth Circuit noted, "the very purpose of § 3582(c)(1)(A) is to provide a 'safety valve' that allows for sentence reductions when there is *not* a specific statute that already affords relief but 'extraordinary and compelling reasons' nevertheless justify a reduction." *Id*. at 287 (emphasis in original). In sum, the Fourth Circuit concluded that it saw "nothing inconsistent about Congress's paired First Step Act judgments: that not *all* defendants convicted under § 924(c) should receive new

22

sentences, but that the courts should be empowered to relieve *some* defendants of those sentences on a case-by-case basis." *Id*. (emphasis in original; quotation marks omitted).

We find the Fourth Circuit's analysis persuasive and conclude that it applies equally to the situation presented here. The plain text of § 401(c) of the First Step Act makes clear that Congress chose not to afford relief to *all* defendants who, prior to the First Step Act, were sentenced to mandatory life imprisonment under § 841(b)(1)(A). But nothing in § 401(c) or any other part of the First Step Act indicates that Congress intended to prohibit district courts, on an individualized, case-by-case basis, from granting sentence reductions under § 3582(c)(1)(A)(i) to *some* of those defendants. Indeed, as the Fourth Circuit noted in *McCoy*, Congress's purpose in enacting § 3582(c)(1)(A) was to provide a narrow avenue for relief "when there is *not* a specific statute that already affords relief but 'extraordinary and compelling reasons' nevertheless justify a [sentence] reduction." *Id*. at 287 (emphasis in original). Thus, the possibility of a district court finding the existence of "extraordinary and compelling reasons" based, in part, on a defendant's pre-First Step Act mandatory life sentence under § 841(b)(1)(A) does not, in our view, necessarily usurp Congressional power.

That said, we also agree with the Sixth Circuit's decision in *Tomes* that the fact a defendant is serving a pre-First Step Act mandatory life sentence imposed under § 841(b)(1)(A) cannot, standing alone, serve as the basis for a sentence reduction under § 3582(c)(1)(A)(i). Instead, we conclude that it can only be the combination of such a sentence and a defendant's unique circumstances that constitute "extraordinary and compelling reasons" for purposes of § 3582(c)(1)(A)(i). We make no attempt at this

23

point, however, to catalog what those unique circumstances might be. Instead, we leave it to the district court on remand to determine whether, in McGee's case, there are unique circumstances that, in combination with the mandatory sentence he received under § 841(b)(1)(A), constitute "extraordinary and compelling reasons" for a sentence reduction under § 3582(c)(1)(A).

### c) The district court's authority at step two of the statutory test

The district court's decision also indicates that the district court viewed its authority, at step two of the statutory test, as limited by the Sentencing Commission's most recent policy statement. In other words, the district court appears to have treated the Sentencing Commission's most recent policy statement as "applicable" to McGee's motion and in turn concluded that the reasons cited by McGee in his motion were not "consistent with" that policy statement. Although we agree, as discussed above, that Congress intended for the Sentencing Commission's policy statements to serve as guideposts for district courts under the second part of the statutory test, we conclude that the Sentencing Commission's most recent policy statement, which was issued prior to the First Step Act, is not "applicable" to McGee's motion. We therefore conclude that the district court erred in considering itself bound by that policy statement.

As we have discussed, § 994(a)(2)(C) requires the Sentencing Commission to promulgate "general policy statements regarding . . . the sentence modification provisions set forth in section[] . . . 3582(c) of title 18." 28 U.S.C. § 994(a)(2)(C). The Sentencing Commission's most recent policy statement regarding sentencing reductions under § 3582(c)(1) was promulgated on November 1, 2018, slightly more

24

than one month *before* the enactment of the First Step Act. That policy statement

provides as follows:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C.
> § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may
> impose a term of supervised release with or without conditions that does
> not exceed the unserved portion of the original term of imprisonment)
> if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the
> extent that they are applicable, the court determines that—
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction; or
>
>     (B) The defendant (i) is at least 70 years old; and (ii) has served at least
>         30 years in prison pursuant to a sentence imposed under 18 U.S.C.
>         § 3559(c) for the offense or offenses for which the defendant is
>         imprisoned;
>
> (2) The defendant is not a danger to the safety of any other person or to the
>     community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13 (2018).

The Commentary to § 1B1.13, in obvious response to Congress's mandate to the

Sentencing Commission in § 994(t) to "describe what should be considered extraordinary

and compelling reasons for sentence reduction," provides as follows:

> **1. Extraordinary and Compelling Reasons**.--Provided the defendant
> meets the requirements of subdivision (2), extraordinary and compelling
> reasons exist under any of the circumstances set forth below:
> **(A) Medical Condition of the Defendant**.--
>  (i) The defendant is suffering from a terminal illness (i.e., a serious and
> advanced illness with an end of life trajectory). A specific prognosis of
> life expectancy (i.e., a probability of death within a specific time period)
> is not required. Examples include metastatic solid-tumor cancer,
> amyotrophic lateral sclerosis (ALS), end-stage organ disease, and
> advanced dementia.
> (ii) The defendant is--
> (I) suffering from a serious physical or medical condition,

25

(II) suffering from a serious functional or cognitive impairment, or
(III) experiencing deteriorating physical or mental health because of the aging process,
that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(B) Age of the Defendant**.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

**(C) Family Circumstances**.--
(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

**(D) Other Reasons**.--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

**2. Foreseeability of Extraordinary and Compelling Reasons**.--For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.

**3. Rehabilitation of the Defendant**.--Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement.

*Id.* cmt. 1-3.[4]

Although Congress's enactment of the First Step Act and its amendment of

§ 3582(c)(1) should have prompted the Sentencing Commission to revise the policy

---

[4] The remainder of the Commentary addresses the procedural aspects of the compassionate release statute as they existed prior to the First Step Act.

statement set forth in § 1B1.13, the Sentencing Commission has, to date, been unable to do so. The Sentencing Commission consists of seven voting members and, per statute, requires four members for a quorum to amend the guidelines. 28 U.S.C. §§ 991(a) (setting forth the number of members), 994(a) (requiring the vote of four members). Since the First Step Act was enacted, the Commission has had only two voting members. Thus, the Commission has been unable to comply with its statutory duty of promulgating a post-First Step Act policy statement regarding the appropriate use of the sentence reduction provisions of § 3582(c)(1)(A)(i).

The government argues that the Sentencing Commission's existing policy statement remains binding on district courts, even in cases where the defendant, rather than the Director of the BOP, has filed a motion for sentence reduction under § 3582(c)(1)(A). The problem with this position, however, is at least two-fold. First, it ignores the fact that the Sentencing Commission has failed to fulfill its statutory duty to issue a post-First Step Act policy statement recognizing the ability of defendants to file their own motions for sentence reductions. Second, and relatedly, it effectively undercuts the statutory changes that Congress made in the First Step Act when it authorized defendants to file their own motions. More specifically, treating the existing policy statement as continuing to be applicable would effectively eliminate, in all cases involving motions filed directly by defendants rather than the Director of the BOP, the "Other Reasons" (i.e., "catch-all") category that the Sentencing Commission clearly intended to exist. This is because the "catch-all" category, as described in the Sentencing Commission's existing policy statement, requires a determination by the Director of the

BOP that extraordinary and compelling circumstances exist in a given case. But, in a case where the defendant has moved for relief under the statute, the Director of the BOP has necessarily *not* made any such determination. This is problematic and clearly undercuts not only Congress's intent to expand the use of compassionate release,[5] but also the Sentencing Commission's intent to recognize a "catch-all" category of cases in addition to those that fall within the narrow confines of the first three categories of cases. Thus, we reject the government's position. *See generally Dorsey v. United States*, 567 U.S. 260, 266 (2012) (noting that "federal sentencing statutes . . . interact[] with the Guidelines in an important way," and always "trump[] the Guidelines").

We conclude instead, as have the Second, Fourth, Sixth, and Seventh Circuits, that the Sentencing Commission's existing policy statement is applicable only to motions for sentence reductions filed by the Director of the BOP, and not to motions filed directly by defendants. *See McCoy*, 981 F.3d at 281; *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020); *Jones*, 980 F.3d at 1109; *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020). "In other words, if a compassionate release motion is not brought by the BOP Director, Guideline § 1B1.13" would "not, by its own terms [be considered to] apply to it." *Brooker*, 976 F.3d at 236. "Because Guideline § 1B1.13 is not 'applicable' to compassionate release motions brought by defendants, Application Note 1(D) cannot

---

[5] Although Congress undoubtedly knew that there would be some time lag between the time of the statutory changes it made with the First Step Act and the Sentencing Commission's issuance of a new policy statement recognizing those changes, it surely could not have known, and did not intend, that there would be a significant time lag, or that the Sentencing Commission would fail altogether to issue a new policy statement.

28

constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." *Id.*

*d) Conclusion*

Because the district court misunderstood the extent of its authority at both steps one and two of § 3582(c)(1)(A)'s statutory test, we reverse the district court's decision and remand to the district court so that it may consider McGee's motion anew.[6]

### III

The judgment of the district court is REVERSED and the case is REMANDED to the district court for further proceedings consistent with this opinion.

---

[6] For that same reason, we do not address the second issue raised by McGee in his appeal, i.e., whether the circumstances outlined in his motion constitute "extraordinary and compelling reasons" for reducing his sentence under § 3582(c)(1)(A).