**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

**December 17, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JASONN GONZALES,

    Defendant - Appellant.

No. 21-2060
(D.C. No. 1:14-CR-00922-JB-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **McHUGH**, and **CARSON**, Circuit Judges.
_____

Jasonn Gonzales appeals the district court's denial of his motion for

compassionate release under 18 U.S.C. § 3582(c)(1)(A). Exercising jurisdiction

under 28 U.S.C. § 1291, we affirm.

**BACKGROUND**

From January 2009 through May 2012, Gonzales and a co-conspirator engaged

in an extensive scheme to fraudulently obtain benefits from unemployment agencies

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

in Colorado, New Mexico, and Texas. They registered twenty fictitious companies with the agencies, listed real people as employees, and submitted unemployment-benefit claims on behalf of those individuals. Gonzales and his co-conspirator then obtained debit cards from those agencies and used the funds for their own benefit. They submitted over $1 million in fraudulent claims and ultimately defrauded the state agencies of over $800,000. In the process, they used personal information from over 100 victims, much of which Gonzales obtained from his work as an accountant.

In 2014, Gonzales was indicted on four counts of mail fraud, one count of conspiracy to commit mail fraud, and one count of aggravated identity theft. He pleaded guilty to all counts. The district court calculated his offense level as 30 and his criminal history category as II, for a guidelines range of 108 to 135 months on the fraud and conspiracy charges, followed by a mandatory consecutive sentence of 24 months on the identify-theft charge. The court varied the range downward to 87 months, which, combined with the sentence for identity theft, resulted in a total term of 111 months. The court also ordered restitution in the amount of $804,735.73. We affirmed. *United States v. Gonzales*, 844 F.3d 929, 930 (10th Cir. 2016).

In May 2020, after serving 48 months of his sentence, Gonzales filed a motion under § 3582(c)(1)(A) to have his sentence reduced to time served. He alleged that the combination of his medical conditions—severe obesity, severe asthma, chronic obstructive sleep apnea, deep vein thrombosis, leukocytosis, and cellulitis—placed him at heightened risk of death or serious illness from COVID-19. Although he had contracted, and recovered from, COVID-19 shortly before filing his motion, he

contended he remained at risk of re-infection.  Gonzales also argued that the failure

of the Bureau of Prisons ("BOP") to adequately treat his conditions placed him at

heightened risk, citing the failure to treat his cellulitis on one occasion until he

became septic and a two-week delay in providing an antibiotic prescribed for

symptomatic relief during his first bout with COVID-19.  He further alleged his

prison suffered from overcrowding and had been acutely impacted by COVID-19.

And he noted that a district court had granted a temporary restraining order in a class

action raising a constitutional claim based on his facility's failure to protect

vulnerable inmates through compassionate release or home confinement.  *See*

*Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 415, 453-56 (D. Conn. 2020).

The district court held a hearing in July 2020.  Over the next several months,

Gonzales filed eight supplements, including updates on his conditions, updates on the

care that he and fellow inmates were receiving, and a press release about an inmate

who died after contracting COVID-19 a second time.  On June 1, 2021, the court

denied Gonzales's motion in a 93-page decision, finding that Gonzales had exhausted

his administrative remedies but had not shown that a reduced sentence was justified.

The court first explained that Gonzales failed to show extraordinary and

compelling reasons for a reduced sentence.  The court found that his risk of

contracting COVID-19 was low because:  (1) he had previously contracted it and,

according to the Centers for Disease Control and Prevention ("CDC"), re-infections

were "rare," R. Vol. 1 at 215 (internal quotation marks omitted); and (2) he either had

been offered, or would soon be offered, the COVID-19 vaccine, as over half of the

inmates at his facility had been offered the vaccine as of March 3, 2021. The court expressed "concern[] about the BOP's repeated neglect of Gonzales'[s] medical conditions." *Id.* But the court found that his conditions were "relatively common" and that he would not "be healthy even if released from prison." *Id.* at 213. The court also found that the BOP is at least "capable of managing" his conditions, *id.* at 215, noting: (1) his facility is "designed for [inmates] who have complex, and usually chronic, medical . . . conditions," *id.* at 213 (internal quotation marks omitted); and (2) the facility is near a hospital, where Gonzales had received adequate care in the past. The court indicated that the solution was not Gonzales's release but for the BOP to improve his care.[1]

The court next stated "there are no current applicable policy statements from the Sentencing Commission" when a compassionate-release motion is brought by a defendant. *Id.* at 191. The court thus declined to consider the policy statement that outlines factors for a sentence reduction "[u]pon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A)" and expounds on the meaning of "extraordinary and compelling reasons." U.S. Sent'g Guidelines Manual ("USSG") § 1B1.13 & cmt. n.1 (U.S. Sent'g Comm'n 2018).[2]

---

[1] The court requested that the BOP file a status report regarding Gonzales's medical care. The court noted that if the BOP failed to provide adequate care, Gonzales could pursue injunctive relief under *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), or mandamus relief under 28 U.S.C. § 1361.

[2] In *United States v. Maumau*, 993 F.3d 821, 836-37 (10th Cir. 2021), and *United States v. McGee*, 992 F.3d 1035, 1050 (10th Cir. 2021), we joined four other

Finally, the court concluded that the 18 U.S.C. § 3553(a) factors did not weigh in favor of a sentence reduction. The court explained that it "crafted carefully Gonzales'[s] sentence in 2016," R. Vol. 1 at 228, discussing the eleven factors that put downward pressure on the sentence, the nine factors that put upward pressure, and the ultimate decision to impose a sentence 21 months below the bottom of Gonzales's guidelines range.[3] The court next noted that Gonzales "devote[d] very little time to discussing § 3553(a)'s factors" in his motion, reply, post-hearing brief, and supplements. *Id.* at 233 n.21. Reviewing the § 3553(a) factors seriatim and considering pre- and post-sentencing conduct, the court found that no factor weighed in favor of release.

Accordingly, the court denied Gonzales's motion. This appeal followed.

---

circuits in holding that USSG § 1B1.13 does not apply to § 3582(c)(1)(A) motions filed by defendants, as opposed to motions filed by the BOP. The district court interpreted those opinions as preventing courts from even "look[ing] at the Policy Statement, at least for guidance." R. Vol. 1 at 195 n.13. But we have also held that USSG § 1B1.13 cannot restrict the court's discretion, not that the court is precluded from considering it altogether. *See United States v. Hald*, 8 F.4th 932, 938 (10th Cir. 2021) (noting "the district court's discretion is not restricted by any Sentencing Commission policy statements, although it would hardly be an abuse of discretion for a district court to look to the present policy statement for guidance" (citation omitted)). The district court also included a lengthy critique of *Maumau* and *McGee* and expressed its preference for the minority view stated in *United States v. Bryant*, 996 F.3d 1243, 1247 (11th Cir.), *cert. denied*, No. 20-1732, 2021 WL 5763101 (U.S. Dec. 6, 2021). But the district court agreed to "follow faithfully the Tenth Circuit law." R. Vol. 1 at 198 n.13. *See generally United States v. Spedalieri*, 910 F.2d 707, 709 n.2 (10th Cir. 1990) ("A district court must follow the precedent of this circuit, regardless of its views concerning the advantages of the precedent of our sister circuits.").

[3] The court had no discretion with respect to the consecutive sentence of 24 months for identify theft. *See Gonzales*, 844 F.3d at 930.

## DISCUSSION

Under § 3582(c)(1)(A), a defendant may move for compassionate release in the district court after exhausting administrative remedies. The court may grant the motion if the defendant shows a reduced sentence is: (1) supported by "extraordinary and compelling reasons"; (2) "consistent with applicable policy statements issued by the Sentencing Commission"; and (3) consistent with the factors "in § 3553(a), to the extent that they are applicable." *United States v. Hemmelgarn*, 15 F.4th 1027, 1029 (10th Cir. 2021). "A district court may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and does not need to address the others." *Id.* (brackets and internal quotation marks omitted). We review the denial of a compassionate-release motion for abuse of discretion. *Id.* at 1031. Under this standard, we cannot reverse the district court unless it "relie[d] on an incorrect conclusion of law or a clearly erroneous finding of fact," *id.* (internal quotation marks omitted), or "we have a definite and firm conviction that the [district] court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances," *United States v. Hald*, 8 F.4th 932, 949 (10th Cir. 2021) (internal quotation marks omitted).

As in the district court, Gonzales focuses his arguments on the extraordinary-and-compelling-reasons prong for compassionate release. But because he has not shown error in the court's § 3553(a) analysis, we do not address his arguments regarding extraordinary and compelling reasons. *Cf. id.* at 942-43 (noting if a

6

compassionate-release motion fails at any step, the district court need not "make the useless gesture of determining whether one of the other steps is satisfied").

Regarding the § 3553(a) analysis, Gonzales contends that the district court did not meaningfully assess the statutory factors. We are "not in the business of grading the papers of our very busy colleagues on the trial bench." *Id.* at 947. In any event, the record shows that the court "considered the parties arguments and ha[d] a reasoned basis for exercising [its] own legal decisionmaking authority." *Id.* at 948 (internal quotation marks omitted).

The court methodically addressed each § 3553(a) factor, beginning with "the nature and circumstances of the offense and the history and characteristics of the defendant," § 3553(a)(1). The court discussed the sweeping scope of Gonzales's crimes as well as the prevalence and impact of such fraud nationwide. The court recognized his crimes were nonviolent but noted his criminal history included rape and burglary. And although the court found that he had made "significant rehabilitative efforts" and had not received "any disciplinary write-ups," it noted that Gonzales had previously "rehabilitated" while incarcerated and had "used that rehabilitation," including a college education and financial skills, to commit the financial offenses. R. Vol. 1 at 234-35. The court thus found that "the severity of Gonzales'[s] offense[s], coupled with his significant criminal history, counsel[ed] against imposing a time served sentence." *Id.* at 235.

Next, the court reviewed § 3553(a)(2) and concluded that reducing Gonzales's sentence to time served would not "reflect the seriousness of the offense, promote

respect for the law, provide just punishment, afford adequate deterrence, or provide Gonzales with necessary training and care." *Id.* at 236.  In particular, the court expressed "concern[] that Gonzales may reoffend" and found that "it is important that Gonzales serve the entirety of his sentence," both to deter him from reoffending and to deter others in New Mexico from committing unemployment fraud, which had cost the state over $133 million from April 2020 to April 2021.  *Id.* at 235.  The court also recognized that although incarceration cannot be used for rehabilitation, "Gonzales could benefit from additional BOP programming to assist with his gambling addiction and prescription pill addiction, which have been a continuing problem in his life and which motivated the underlying offense[s]." *Id.* at 235-36.

The court then addressed "the kinds of sentences available," § 3553(a)(3), "the kinds of sentence and the sentencing range established for" such offenses by the sentencing guidelines, § 3553(a)(4), and "any pertinent policy statement," § 3553(a)(5). The court explained that neither (a)(3) nor (a)(4) supported a reduction because Gonzales's sentence was already 21 months below the bottom of his guidelines range. And the court determined that (a)(5) "is a neutral factor," because it found no applicable policy statements "and Gonzales present[ed] none."  R. Vol. 1 at 236.

The district court found that § 3553(a)(6)—"the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"—weighed against Gonzales's request for a reduced sentence.  The court reiterated that he had already received a sentence well below the guidelines range. And although Gonzales's co-conspirator received a sentence of only 71 months, the

co-conspirator: (1) was not convicted of aggravated identity theft and, therefore, was spared the additional 24 months added to Gonzales's sentence; (2) had a lower offense level, which resulted in a lower guidelines range of 97 to 121 months, compared to Gonzales's range of 108 to 135 months for the corresponding offenses; and (3) "was less culpable in the scheme than Gonzales," which the court considered in calculating his 26-month downward variance, compared to Gonzales's 21-month downward variance. *Id.* at 237. The court further observed that if it reduced Gonzales's sentence to time-served, he would serve less time than his co-conspirator, even though "Gonzales had a higher guidelines range . . . , committed an additional crime, and was more culpable." *Id.* Because reducing Gonzales's sentence would cause, rather than alleviate, a disparity, the court found that (a)(6) weighed against reducing Gonzales's sentence.

Finally, the district court addressed "the need to provide restitution to any victims of the offense." § 3553(a)(7). Gonzales argued that his release would enable him to pay restitution because he could earn more money than he was earning in the BOP. But the court noted that Gonzales offered no evidence or argument that he had paid any of the $804,735.73 ordered in restitution and, thus, found no indication that Gonzales had "taken the [c]ourt's restitution order seriously." R. Vol. 1 at 238. The court, therefore, found that (a)(7) also weighed against compassionate release.

Ultimately, the court found that none of the factors weighed in Gonzales's favor. And "the weighing of the § 3553(a) factors is committed to the discretion of the district court." *Hald*, 8 F.4th at 949. Gonzales, however, argues that two facts in

9

the court's § 3553(a) analysis are not supported by the record and that the court evinced a hostility to resentencing that necessitated recusal.[4]  We are not persuaded.

Gonzales first contends the district court erred when it questioned resentencing federal inmates "in the midst of rising crime rates in many American cities, including Albuquerque" because there was no basis for this statement in the record.  R. Vol. 1 at 233 n.20.  The district court made this passing observation in a footnote critiquing legislative efforts related to resentencing, not as part of its analysis of any § 3553(a) factor in Gonzales's case.  Accordingly, the court's error, if any, was not prejudicial.

Gonzales also contends the court erred when, as part of its § 3553(a)(7) analysis, it referenced "the fact that [he] has made no progress in paying restitution." *Id.* at 238.  He is correct that the record does not reflect how much restitution he paid and does not show his lack of progress as a "fact."  But that is precisely the problem for Gonzales—the record does not show whether he paid any restitution at all.  He provided the district court with neither argument nor evidence that he "attempted to pay any restitution while incarcerated," and thus, the court found no indication that he had taken his restitution obligations "seriously." *Id.*  Whether the record

---

[4] Gonzales also disputes the finding that his "risk of contracting COVID-19 ha[d] decreased significantly . . . , in part because [he] contracted COVID-19 already."  R. Vol. 1 at 215.  Because the court made this finding in assessing the extraordinary-and-compelling-reasons prong, we need not decide whether there was error.  Nevertheless, we have observed "that, like access to vaccination, prior infection and recovery from COVID-19 would presumably weigh against a finding of extraordinary and compelling reasons." *Hald*, 8 F.4th at 939 n.5.

confirmed the lack of restitution payments or failed to reflect any payments, the result is the same—"§ 3553(a)(7) does not weigh in Gonzales'[s] favor," *id.*

Other than the immaterial dispute with the (a)(7) discussion, Gonzales does not identify any factual error in the court's § 3553(a) analysis. We therefore do not address the court's remaining factual findings. *See Talley v. Time, Inc.*, 923 F.3d 878, 906 n.28 (10th Cir. 2019) (declining to address an argument not raised on appeal). Instead, Gonzales challenges the court's entire analysis based on what he describes as the district judge's "unyielding hostility on resentencing," Aplt. Opening Br. at 28, and "adamant enmity of compassionate release," *id.* at 34.

Gonzales analogizes his case to *United States v. Haggerty*, 731 F.3d 1094 (10th Cir. 2013). In *Haggerty*, the government moved for a one-level reduction under USSG § 3E1.1(b) for defendant's acceptance of responsibility on the grounds that his "timely notice and agreement to plead guilty allowed [the government] to avoid preparing for trial and permitted both it and the court to allocate resources more efficiently." *Id.* at 1096. The court denied the reduction, not based "on consideration of the specific criteria outlined in § 3E1.1(b) and its commentary," but on "its own personal belief a defendant should not be rewarded under § 3E1.1(b) for avoiding trial by pleading guilty and that trials are the better or intended way to resolve cases in our judicial system." *Id.* at 1100. Both the United States and Haggerty asked this court to reverse. *See id.* at 1095-96. We agreed and held that "a sentencing judge's personal view that one should not be rewarded with a lesser

11

sentence for pleading guilty is an impermissible reason for denying a § 3E1.1(b) reduction and constitutes an abuse of discretion." *Id.* at 1101.

*Haggerty* is readily distinguishable. Although Gonzales correctly notes that the district judge extensively dispensed his personal views on resentencing, the record does not indicate that the judge based his ruling on those views.

For example, the district judge criticized our analysis in *McGee* and *Maumau* as well as what he perceived as a higher reversal rate in appeals from the denial of compassionate-release motions. But the judge said he would "follow faithfully the Tenth Circuit law," R. Vol. 1 at 198 n.13, and would "not apply any analyses that the Tenth Circuit has forbidden," *id.* at 194 n.13. The judge also criticized Congress' efforts to expand compassionate release. However, he acknowledged that "[t]he political people are the ones that make these decisions" and that he has "to be faithful and follow them." R. Vol. 3 at 58. The judge lamented his increased caseload due to compassionate-release motions and expressed that judges "are not excited about resentencing all the people they have sentenced already." R. Vol. 1 at 201 n.13. But he did not prejudge Gonzales's motion, stating at the hearing that he was "leaning against" granting it but needed to "give it a lot of thought." R. Vol. 3 at 58. In addition, although he suggested that resentencing should be reserved for "procedural or substantive error," R. Vol. 1 at 233 n.20, he noted the § 3553(a) factors "often, following a lengthy prison sentence, *weigh in favor of a reduction*," *id.* at 196 n.13 (emphasis added). Finally, the judge questioned the wisdom of the "wholesale resentencing of America's federal prison population." *Id.* at 233 n.20. But he

12

clarified that "*in general*, it does not make sense to work hard to arrive at a sentence that accurately reflects the [§] 3553(a) factors only to discard it several years later," *id.* at 232 n.20 (emphasis added).

Ultimately, the record does not reflect that the judge based his decision on his personal views concerning resentencing.[5]  And because Gonzales has not shown that the district court, in its § 3553(a) analysis, "relie[d] on an incorrect conclusion of law or a clearly erroneous finding of fact," *Hemmelgarn*, 15 F.4th at 1031 (internal quotation marks omitted), or "made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances," *Hald*, 8 F.4th at 949 (internal quotation marks omitted), we discern no abuse of discretion.  Accordingly, we affirm.

## CONCLUSION

The district court's order is affirmed.  Gonzales's motion to expedite the appeal is denied as moot.

Entered for the Court


Carolyn B. McHugh
Circuit Judge

---

[5] Gonzales also cites the judicial disqualification statute, which requires a federal judge to recuse himself from "any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455.  But "[n]ormally, a party alleging judicial bias should move for recusal, and must do so in a timely fashion." *United States v. Nickl*, 427 F.3d 1286, 1297 (10th Cir. 2005) (internal quotation marks omitted).  Gonzales never sought recusal, despite now relying heavily on statements the judge made at the hearing—eleven months before the court denied his motion.  In any event, an adverse ruling is not a basis for recusal, and the judge's "comments [do not] reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.* at 1298 (internal quotation marks omitted).