FILED
United States Court of Appeals
Tenth Circuit

April 14, 2022

Christopher M. Wolpert
Clerk of Court

UNITED STATES COURT OF APPEALS

TENON CIRCUIT

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

THERON MAXTON,

Defendant - Appellant.

No. 20-1428
(D.C. No. 1:13-CR-00411-PAB-1)
(D. Colo.)

---

ORDER AND JUDGMENT[*]

---

Before **HOLMES**, **KELLY**, and **McHUGH**, Circuit Judges.

---

Defendant-Appellant Theron Johnny Maxton, proceeding pro se,[1] appeals

from the District of Colorado's denial of his motion for a sentence reduction

---

[*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1(a) and Tenth Circuit Rule 32.1(A). After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument.

[1]     Because Mr. Maxton is proceeding pro se, we construe his filings liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *accord Garza v. Davis*, 596 F.3d 1198, 1201 n.2 (10th Cir. 2010), but "we will not 'assume the role of advocate,'" *United States v. Parker*, 720 F.3d 781, 784 n.1 (10th Cir. 2013) (quoting *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008)).

under 18 U.S.C. § 3852(c)(1)(A), otherwise known as a motion for compassionate release. Mr. Maxton also requests leave to proceed *in forma pauperis* in this appeal. In denying Mr. Maxton's requested relief, the district court held that he failed to demonstrate extraordinary and compelling reasons for a sentence reduction and failed to establish that a reduction in his sentence would be appropriate in light of the sentencing factors set out in 18 U.S.C. § 3553(a). Exercising jurisdiction under 28 U.S.C. § 1291, we **affirm** the district court's order and **grant** Mr. Maxton's motion to proceed *in forma pauperis*.

## I

Mr. Maxton is a 67-year-old who, at the time of his motion for compassionate release, was incarcerated at the United States Penitentiary in Victorville, California ("USP Victorville"). In 2015, Mr. Maxton was sentenced by the district court in the District of Colorado to 100 months' imprisonment plus three years of supervised release for four counts related to threatening federal prison officials and their family members in violation of 18 U.S.C. §§ 115(a)(1)(A), (a)(1)(B), and (b)(4). This sentence was imposed consecutively to two federal sentences Mr. Maxton had received in the District of South Carolina, the first of which Mr. Maxton had been serving when he made the threats at issue in his 2015 conviction.

In 2020, while Mr. Maxton was still serving his prior sentence imposed by

2

the District of South Carolina, he filed a Pro Se Motion for Compassionate Release.[2] He was later appointed counsel, who filed a supplement to his pro se motion. In his motion and supplement, Mr. Maxton asserted that his sentence should be reduced because of his serious medical issues—including chronic obstructive pulmonary disease ("COPD"), "asthma, severe headaches, chronic sinusitis, recurrent eye infections, hypertension, chronic constipation, poor dentition, degenerative cervical spine changes, and . . . a sizeable cyst on his kidney"; these conditions allegedly put him at increased risk of harm from contracting COVID-19 in prison. R., Vol. VI, at 109–110 (Supp. to Pro Se Motion for Compassionate Release, filed Oct. 1, 2020); *see id.* at 33 (Request for Compassionate Release, filed July 2, 2020).

Mr. Maxton further asserted that the prison's failure to properly treat his health conditions constituted an extraordinary and compelling reason for relief under U.S. Sentencing Commission Guidelines Manual ("U.S.S.G." or

---

[2] Mr. Maxton contended before the district court that the government had miscalculated his consecutive sentences, arguing that he had already begun serving the sentence stemming from his 2015 conviction. *See* R. Vol. VI, at 156–58 (Reply to Gov. Resp., filed Oct. 23, 2020). But the district court held that these arguments were "unconvincing" because Mr. Maxton had not yet "complete[d] his sentences in South Carolina" based on the calculations in the sentencing documents. *Id.* at 172 (D. Ct. Order Denying Mot. For Compassionate Release, dated Nov. 9, 2020). Mr. Maxton does not appeal from this aspect of the district court's decision. *See* Aplt.'s Opening Br. at 2–3. Accordingly, we adopt the district court's construction of Mr. Maxton's sentence.

3

"Guidelines") § 1B1.13(1)(A),[3] and that the sentence Mr. Maxton had already served was sufficient to satisfy the purpose of sentencing in light of his age and decreased likelihood of recidivism. *See id.* at 110–13. The district court, however, denied Mr. Maxton's request.

The court noted that the government did not dispute Mr. Maxton's medical conditions nor his risk of severe illness from COVID-19, but instead contended Mr. Maxton could not show extraordinary and compelling circumstances falling within the categories provided in U.S.S.G. § 1B1.13. *See id.* at 169. Agreeing with the government, the court found Mr. Maxton failed to demonstrate that his medical condition "substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility," as required under § 1B1.13(1)(A). *Id.* at 170–71 (quoting U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)). Additionally, the court found unpersuasive "Mr. Maxton's arguments that the Bureau of Prisons is frustrating his attempts at self-care by withholding medical treatment or by failing to adequately control the spread of COVID-19"; it noted that Mr. Maxton had been receiving medical treatment—despite his refusal of certain treatments—and that there were few active COVID-19 cases at USP Victorville, where Mr. Maxton was incarcerated. *Id.* at 171–72. Finally, the

---

[3]    All citations to the Guidelines refer to the 2018 version of the Guidelines manual.

court found that, because Mr. Maxton had not yet started the 2015 sentence, he had not shown that he had served "at least 10 years or 75 percent" of his term of imprisonment as provided in U.S.S.G. § 1B1.13 cmt. n.1(B). *Id.* at 172. Accordingly, the court determined that Mr. Maxton had failed to demonstrate extraordinary or compelling reasons for compassionate release.

Further, the district court held that, even if Mr. Maxton *had* demonstrated extraordinary or compelling reasons for his release under 18 U.S.C. § 3582(c)(1)(A)(i), reducing his sentence still would have been inappropriate in light of the sentencing factors outlined in 18 U.S.C. § 3553(a). Specifically, the court reasoned that "the crimes Mr. Maxton committed in this case"—which included soliciting a former inmate to rape and kill federal officials and their families—"occurred only eight years ago." *Id.* at 175. Because Mr. Maxton's medical conditions had not prevented him from committing the underlying offenses for which he had been sentenced, and because he had not yet served any of the sentence at issue, the court found a reduction in sentence was unwarranted.

Following the district court's decision on November 9, 2020, Mr. Maxton filed a pro se notice of appeal. Significantly, his notice of appeal was dated November 20, 2020, but it was postmarked on November 30 and filed on December 8, 2020, after the fourteen-day deadline for his appeal had passed.

**II**

5

## A

Before we rule on the merits of Mr. Maxton's appeal, we must determine whether his appeal is timely. In bringing this appeal from the district court's denial of his motion for compassionate release under 18 U.S.C. § 3582(c)(1), Mr. Maxton was subject to the fourteen-day deadline for filing criminal appeals. *See United States v. Lara*, No. 20-6133, 2020 WL 8729680, at *1 (10th Cir. Oct. 1, 2020) (unpublished) (in the context of an appeal from a denial of a motion for compassionate release, stating that "[i]n a criminal case—including a proceeding under 18 U.S.C. § 3582—a defendant must file a notice of appeal within 14 days after the district court enters the judgment or order he intends to appeal"); *cf. United States v. Randall*, 666 F.3d 1238, 1240 (10th Cir. 2011) ("We construe Defendant's motion for modification of his sentence as a motion brought under 18 U.S.C. § 3582(c)(2). The motion therefore addresses a criminal matter, the appeal of which is governed by Fed. R. App. P. 4(b)."); *United States v. Espinosa-Talmantes*, 319 F.3d 1245, 1246 (10th Cir. 2003) (reversing the district court to conclude, based on persuasive authority from our sister circuits, that a motion to reduce a sentence under 18 U.S.C. § 3582(c)(2) is a continuation of a prior criminal proceeding and thus Fed. R. App. P. 4(b) applies); *cf. also United States v. McCalister*, 601 F.3d 1086, 1087 (10th Cir. 2010) (holding that a "18 U.S.C. § 3582 motion is a criminal proceeding" and thus is "entirely unlike other

forms of post-convictions proceedings, namely habeas corpus proceedings, which are for many purposes considered civil in nature").

The criminal appellate filing deadlines established by the Federal Rules of Appellate Procedure represent "inflexible claim-processing rule[s]" that "assure relief to a party properly raising them." *United States v. Garduno*, 506 F.3d 1287, 1291 (10th Cir. 2007) (alteration in original) (first quoting *Kontrick v. Ryan*, 540 U.S. 443, 456 (2004); and then quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam)).  As referenced *supra*, Mr. Maxton's notice of appeal was not filed until December 8, 2020, after the fourteen-day deadline.  The government asserts that this rendered his appeal untimely.  *See* Aplee.'s Resp. Br. at ix.

Because the government did not raise the timeliness issue until its response brief, we ordered Mr. Maxton to reply to the government's argument on this issue.  *See Starr v. Kober*, 642 F. App'x 914, 919 (10th Cir. 2016) (unpublished) ("[B]efore dismissing, courts typically give prisoners notice of the timeliness issue and an opportunity to provide the necessary showing.").  In his supplemental filing, Mr. Maxton acknowledges that his notice of appeal was postmarked and received outside of the fourteen-day deadline, but asserts that a prison lockdown resulting from the COVID-19 pandemic rendered him unable to access the prison's legal mail system and required him to submit his mail through

7

staff correctional officers—a process which often delayed the sending of mail. *See* Aplt.'s Supp. Br. on Timeliness at 2–3.  Mr. Maxton declares under penalty of perjury that he mailed his notice of appeal, "using first class postage" through "the mail system available," on November 20, 2020.  *Id.* at 3.

Relying on Mr. Maxton's sworn declaration, we hold his appeal is timely under the prison mailbox rule codified by Federal Rule of Appellate Procedure 4(c)(1).  Rule 4(c)(1) provides that an inmate's notice of appeal "is timely if it is deposited in the [penal] institution's internal mail system on or before the last day for filing."  Fed. R. App. P. 4(c)(1).  Where a "system designed for legal mail" at a prison exists, inmates must use this system "to receive the benefit of this [r]ule."  *Id.*; *see Price v. Philpot*, 420 F.3d 1158, 1165 (10th Cir. 2005) ("[I]f the prison has a legal mail system, then the prisoner must use it as the means of proving compliance with the mailbox rule." (quoting *United States v. Ceballos-Martinez*, 387 F.3d 1140, 1144 (10th Cir. 2004))).  When an "inmate does not have access to a legal mail system—or if the existing legal mail system is inadequate to satisfy the mailbox rule"—then the inmate must prove adherence to the rule through "a declaration [in compliance with 28 U.S.C. § 1746] or notarized statement setting forth the notice's date of deposit with prison officials and attest[ing] that first-class postage was pre-paid."  *Price*, 420 F.3d at 1165 (first alteration in original) (quoting *Ceballos-Martinez*, 387 F.3d at 1145); *see*

Fed. R. App. P. 4(c)(1)(A)(I) (reflecting 2016 changes to the rule that continue to require an inmate to provide, in the absence of other concrete evidence, "a declaration in compliance with 28 U.S.C. § 1746 . . . setting out the date of deposit and stating that first-class postage is being prepaid").

Mr. Maxton's sworn declaration in his supplemental filing complies with the mailbox rule. Mr. Maxton avers that although his institution ordinarily had a legal mail system in place, he was unable to use this system in November or December of 2020 due to a lockdown induced by the COVID-19 pandemic. *See* Aplt.'s Supp. Br. on Timeliness at 2. Although Mr. Maxton "has the burden of proof on this issue," *see Price*, 420 F.3d at 1165, his unrefuted explanation that the prison legal mail system was inaccessible at the time he sought to file his notice of appeal excuses his failure to use the existing legal mail system, *see Christmas v. Oklahoma*, 290 F. App'x 126, 129 (10th Cir. 2008) (unpublished) (holding a pro se prisoner's declaration was sufficient to invoke the mailbox rule when the prisoner did not have access to a legal mail system); *cf. Carbajal v. Swan*, 665 F. App'x 652, 654–55 (10th Cir. 2016) (unpublished) (holding prisoner's appeal untimely when conflicting evidence indicated that the legal mail system *was* accessible to the petitioner).

Mr. Maxton also declares under penalty of perjury that he mailed his notice of appeal "using the mailing system available" and "using first class postage" on

9

November 20, 2020—within the fourteen-day filing deadline.  Aplt.'s Supp. Br. on Timeliness at 3.  His reference to the "date of deposit with prison officials" satisfies Rule 4(c)(1).  *Price*, 420 F.3d at 1165.  And, given the presence of a stamp on the envelope used to mail the notice of appeal, *see* R. Vol. VI, at 179, we may liberally construe his reference to "using first-class postage" to indicate that "first-class postage [was] prepaid,"  Fed. R. App. P. 4(c)(1).  *See Christmas*, 290 F. App'x at 129 (construing liberally a reference to postage being prepaid in a pro se prisoner's declaration to indicate that "*first-class* postage was prepaid" when this information could be inferred by other aspects of the filing); *cf. Ceballos-Martinez*, 387 F.3d at 1143 (holding mailbox rule inapplicable where the notice of appeal altogether "lack[ed] a statement that first-class postage was pre-paid").  Finally, Mr. Maxton's declaration "under penalty of perjury under the [l]aws of the United States of America" in his filing substantively satisfies the requirements of 28 U.S.C. § 1746.  Accordingly, because he has complied with the prison mailbox rule, "we deem his notice of appeal timely."  *Pasillas-Sanchez v. Lind*, 663 F. App'x 632, 634 (10th Cir. 2016) (unpublished).

**B**

Turning to the merits of Mr. Maxton's appeal, we conclude he is not entitled to relief.  For starters, Mr. Maxton appears to have waived any challenge to the district court's decision by failing to adequately brief the issues on appeal.

A party's failure to "make any argument or cite any authority to support [an] assertion" waives the unsupported issue. *United States v. Hardwell*, 80 F.3d 1471, 1492 (10th Cir. 1996); *see Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived.").

In his appellate brief, Mr. Maxton states that the first issue on appeal is "all [of] my medical issues," and lists his medical ailments, including cancer, COPD, asthma, kidney problems, and problems with his vision. Aplt.'s Opening Br. at 3. As a second issue, Mr. Maxton asserts that the district court judge "ha[s] a personal vendetta against me," indicating that "the judge denied my compassionate release out of retaliation for the complaints I file[d] against him during my criminal trial." *Id.*; *see also id.* at 4 (indicating that the district court was incorrect because its decision was made "out of prejudic[e] and [r]etaliation"). Mr. Maxton contends that the "wrong law" was applied, and that the "right law" would allow him to be set free due to his medical ailments, but he fails to elaborate on a legal theory or cite authorities in support of his position. *Id.* at 4. And although Mr. Maxton vaguely indicates that the district court incorrectly decided "all of" the facts and failed to consider grounds for relief, he again provides no detail to support these assertions. *Id.*

By failing to identify the district court's error—e.g., specifying facts the

court incorrectly decided or asserting a theory of legal error—Mr. Maxton has waived review of his appeal.  *See, e.g.*, *Bronson v. Swensen*, 500 F.3d 1099, 1104 ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief."); *United States v. Yelloweagle*, 643 F.3d 1275, 1284 (10th Cir. 2011) (noting that we will not "make arguments for" a litigant); *United States v. Rodriguez-Aguirre*, 108 F.3d 1228, 1237 n.8 (10th Cir. 1997) ("[I]t is the appellant's responsibility to tie the salient facts, supported by specific record citation, to [his] legal contentions." (second alteration in original) (quoting *Schaede v. Boeing Co.*, 72 F.3d 138, 1995 WL 736464, at *1 (10th Cir. 1995) (unpublished table decision))).  "[A]lthough we make some allowances for 'the [pro se] plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements[,]' the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (second and third alterations in original) (citation omitted) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

More specifically, Mr. Maxton's reference to his medical conditions, without connecting these medical issues to any legal or factual error by the

district court, waives our consideration of his first issue. *See Reedy v. Werholtz*, 660 F.3d 1270, 1275 (10th Cir. 2011) (declining to consider an argument that "d[id] not challenge the [district] court's reasoning"); *see also Nixon v. City & Cnty. of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015) ("The first task of an appellant is to explain to us why the district court's decision was wrong. Recitation of a tale of apparent injustice may assist in that task, but it cannot substitute for legal argument.").

And, as for the second issue, although he asserts that the district court retaliated against him due to the complaints he filed against the judge during his trial, Mr. Maxton fails to connect this argument to any specific facts pertaining to the district judge's conduct that might evince bias or retaliatory animus or to any legal authority that is even arguably controlling or persuasive in these circumstances. *See United States v. Lewis*, 594 F.3d 1270, 1275 (10th Cir. 2010) ("[I]t is not this court's duty to scour without guidance a voluminous record for evidence supporting [a party's] theory."); *Perry v. Woodward*, 199 F.3d 1126, 1141 n.13 (10th Cir. 1999) ("This court . . . will not craft a party's arguments for him."). Mr. Maxton has thus waived this second issue as well. Given that these were the only two issues advanced by Mr. Maxton on appeal, he has waived his challenge to the district court's judgment through inadequate briefing.

Even if Mr. Maxton had adequately raised these issues, the district court

13

did not err in denying his compassionate release motion.  To grant a

compassionate release motion under 18 U.S.C. § 3582(c)(1)(A), a district court

must assess whether (1) "extraordinary and compelling reasons warrant a sentence

reduction," (2) "such reduction is consistent with applicable policy statements

issued by the Sentencing Commission," and (3) based on the factors laid out in 18

U.S.C. § 3553(a), "the reduction authorized by steps one and two is warranted in

whole or in part under the particular circumstances of the case."  *United States v.*

*Hald*, 8 F.4th 932, 938 (10th Cir. 2021) (quoting *United States v. McGee*, 992

F.3d 1035, 1042 (10th Cir. 2021)), *cert. docketed*, No. 21-6594 (Dec. 15, 2021).

A district court may deny a motion when any of these "three prerequisites . . . is

lacking and [it] do[es] not need to address the others."  *Id.* (quoting *McGee*, 992

F.3d at 1043).  We review a district court's denial of a sentence reduction for

abuse of discretion.  *See United States v. Mannie*, 971 F.3d 1145, 1155 (10th Cir.

2020).

On appeal, Mr. Maxton invokes his health conditions to contend that he

should have been granted compassionate release.  *See* Aplt.'s Opening Br. at 3–4.

But the district court considered these same health conditions, noting that most of

these conditions were undisputed, and balanced the severity of these conditions

against several other factors, including Mr. Maxton's ability to provide self-care,

*see* R., Vol. VI, at 169–71, the medical treatment available from the Bureau of

14

Prisons, *see id.* at 171, the risk of COVID-19 at USP Victorville, *see id.* at

171–72, the amount of his sentence that he had already served, *see id.* at 172, and

his risk of reoffending were he to be released, *see id.* at 174–75.

The district court could permissibly rely on these factors as part of the

policy statements issued by the Sentencing Commission—namely, U.S.S.G. §

1B1.13 cmt. n.1[4]—as well as the factors provided in 18 U.S.C. § 3553(a).  *See*

---

[4]     Both Mr. Maxton and the government argued before the district court
that it should look to the factors outlined in U.S.S.G. § 1B1.13 cmt. n.1 to assess
whether "extraordinary and compelling reasons" for a sentence reduction exist.
*See* R. Vol. VI, at 109–12 (contending that Mr. Maxton's medical conditions are
"extraordinary and compelling by the plain language of" the Guidelines); *id.* at
148–50 (asserting that Mr. Maxton could not demonstrate extraordinary and
compelling reasons under the Guidelines).  The parties, however, disagreed as to
whether the Guidelines were binding.  *Compare id.* at 145 ("The relevant policy
statement of the Commission is binding on the Court."), *with id.* at 102 ("[C]ourts
are free to find that 'extraordinary and compelling reasons' exist, even where the
defendant does not fit any explicitly enumerated § 1B1.13 category.").  The
district court in its decision discussed the Guidelines as providing "reasons that
may warrant a sentence reduction," but did not specify whether it viewed these
Guidelines as binding.  *Id.* at 167.  We have since clarified that the Guidelines
outlined in U.S.S.G. § 1B1.13 cmt. n.1 do *not* bind the district court when it
evaluates a prisoner's § 3582(c) motion.  *See McGee*, 992 F.3d at 1050.
Nevertheless, this clarification of the import of the Guidelines does not alter the
outcome in this case for several reasons.  First, Mr. Maxton has not challenged
the district court's reliance on the Guidelines factors; in fact, his briefing
encouraged the district court to grant a sentence reduction based on these factors.
Accordingly, any error by the district court in relying on these factors was invited
by Mr. Maxton.  *See, e.g.*, *United States v. Jereb*, 882 F.3d 1325, 1338 (10th Cir.
2018) ("The invited-error doctrine prevents a party who induces an erroneous
ruling from being able to have it set aside on appeal." (quoting *United States v.
Morrison*, 771 F.3d 687, 694 (10th Cir. 2014)).  Second, the district court never
explicitly held it was bound by the Guidelines in making its decision, and "it

(continued...)

15

*Hald*, 8 F.4th at 938.  And it did not abuse its discretion in weighing these factors

against Mr. Maxton's health issues; indeed, Mr. Maxton does not challenge any of

these aspects of the district court's rationale.  *See Mannie*, 971 F.3d at 1157–58

(holding the district court did not abuse its discretion in denying a § 3582(c)

motion where it "presented a thorough and reasonably articulated basis for its

conclusion" that weighed factors for and against a sentence reduction).

Nor did the district court commit reversible error by "retaliating" against

Mr. Maxton.  Although Mr. Maxton does not specify the grounds for reversal in

his brief, he appears to suggest that the district court judge erred by failing to

recuse himself from Mr. Maxton's compassionate release proceedings due to the

complaints Mr. Maxton filed against the judge during his criminal trial.  "Recusal

is necessary when a judge's actions or comments 'reveal such a high degree of

favoritism or antagonism as to make fair judgment impossible.'"  *United States v.*

*Nickl*, 427 F.3d 1286, 1298 (10th Cir. 2005) (quoting *Liteky v. United States*, 510

---

[4](...continued)
would hardly be an abuse of discretion for a district court to look to [these Guidelines factors] for guidance."  *See Hald*, 8 F.4th at 938 n.4.  Finally, the district court *also* rejected Mr. Maxton's request based on the factors outlined in 18 U.S.C. § 3553(a).  *See* R. Vol. VI, at 174–75.  Section 3553(a) provides an independent basis for a court to deny a reduction in sentence; accordingly, any error by the district court would have been harmless.  *See United States v. Dean*, No. 21-2082, 2022 WL 484241, at *3 (10th Cir. Feb. 17, 2022) (unpublished) (holding any reliance on inapplicable Guidelines factors was harmless when the district court also relied on the § 3553(a) factors to deny a compassionate release motion).

U.S. 540, 555 (1994)). But, "adverse rulings 'cannot in themselves form the appropriate grounds for disqualification.'" *Green v. Branson*, 108 F.3d 1296, 1305 (10th Cir. 1997) (quoting *Green v. Dorrell*, 969 F.2d 915, 919 (10th Cir. 1992)).

Mr. Maxton's threadbare assertions cannot make out a claim for recusal or bias. In alleging bias and retaliatory animus, Mr. Maxton points only to *his own actions* in filing complaints against the judge during the trial—*not* to any "actions or comments" by the judge. *See Nickl*, 427 F.3d at 1298. Further, the only "retaliation" Mr. Maxton can point to is the court's adverse ruling on his compassionate release motion, *see* Aplt.'s Opening Br. at 3; this constitutes a categorically inadequate basis for any claim of retaliation or bias. *See, e.g.*, *Branson*, 108 F.3d at 1305. Accordingly, even if Mr. Maxton had preserved this argument—which he did not—his retaliation or bias claim would not pass muster. In sum, we conclude the district court did not err in denying Mr. Maxton's motion for compassionate release.

### III

For the foregoing reasons, we **AFFIRM** the district court's judgment. Nevertheless, "[w]e **GRANT** [Mr. Maxton's] motion to proceed *in forma pauperis*." *Hald*, 8 F. 4th at 950.

17

ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge